2023 PA Super 102

| ADRIAN WHITE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTINE MALECKI | : | |
| | : | |
| Appellant | : | No. 1548 MDA 2022 |

Appeal from the Order Entered October 26, 2022,
in the Court of Common Pleas of Luzerne County,
Civil Division at No(s):  1851 of 2022.

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and COLINS, J.*

OPINION BY KUNSELMAN, J.:                                    **JUNE 9, 2023**

Christine Malecki (Mother) appeals the decision of the Luzerne County Court of Common Pleas to award Adrian White (Father) primary physical custody of their 6-year-old son A.C.W. (the Child), pursuant to the Child Custody Act. **See** 23 Pa.C.S.A. §§ 5328(a), 5337(h).  Father requested that the Child move from Mother's home in Pennsylvania to Father's home in Germany.  On appeal, Mother challenges the trial court's substantive custody award, as well as a specific provision of the order, which made her responsible for the cost of transporting the Child between residences.  After careful review, we affirm the trial court's custody award, but we vacate the provision regarding the transportation costs and remand with instruction.

---

* Retired Senior Judge assigned to the Superior Court.

The record discloses the following factual and procedural history: The parties married in August 2016, and the Child was born in September 2016. In mid-2018, the family (including the Child's two half-siblings[1] and Paternal Grandmother) moved to Germany, where Father began employment as a logistics management specialist with the Department of Defense and where he was stationed with the Army Reserves.

A little over week after arriving in Germany, Mother became gravely ill. Mother spent weeks in various hospitals, where she was treated for pneumonia, sepsis, cardiac arrest, and multiple organ failure. At one point, Mother was put on a ventilator and into a medically induced coma. After Mother came out of the coma, Mother learned she had "four strokes, a few mini strokes behind her eyes, and an aneurysm." *See* N.T., 8/31/22, (Day 1) at 175. One of her feet became gangrene, requiring a below-the-knee leg amputation. In September 2018, Mother was transferred to Walter Reed hospital in the United States to continue treatment. She returned to Germany around May 2019.

The parties' relationship deteriorated over the next several months. In December 2019, Mother wanted to return to the United States. Mother said

_____

[1] Each parent had a child from a previous relationship. The Child's siblings are not involved in this matter.

she was dissatisfied with the level of care she was receiving in Germany.[2] Father testified that he was unaware of Mother's intentions until she announced her decision. At some point between December 2019 and February 2020, Mother, the Child, and the maternal half-sibling, moved back to the United States; Father, the paternal half-sibling, and Paternal Grandmother remained in Germany.

Over the next two years, the parties operated without a formal custody order. Father primarily lived in Germany, but he communicated regularly with the Child and visited him when he traveled back to the United States. During this time, Mother was the primary caretaker, assisted by Maternal Grandmother. Eventually, the parties decided to end their marriage.[3]

Father petitioned for primary custody in February 2022 and filed a notice of proposed relocation.[4] The trial court held a custody hearing on August 31 and September 19, 2022. On October 26, 2022, the trial court granted

---

[2] Mother testified that she wanted to return to Walter Reed so she could get fitted for a prosthetic leg, which she had been unable to receive in Germany for over nine months. **See** N.T., 9/19/22 (Day 2) at 51.

[3] The parties' divorce complaint was pending at the time of the custody hearing. Mother alleges that the date of separation was December 2019. The complaint itself was not filed until 2022.

[4] Evidently, Father's complaint for primary custody was held or dismissed without prejudice, as evidenced by the fact that it was reinstated in April 2022. We note that the parties followed the relocation procedure identified in 23 Pa.C.S.A. § 5337. Because this case does not involve relocating **parties**, strict adherence to the relocation procedure, though perhaps prudent, was ultimately superfluous. **See D.K. v. S.K.**, 102 A.3d 467 (Pa. Super. 2014) (discussed **infra**).

Father's request for relocation and awarded him primary custody of the Child. The trial court delineated its reasons for the award contemporaneously with the custody order. Mother timely filed this appeal. She presents four issues for our review:

1. Did the trial court abuse its discretion and err as a matter of law in granted Father's request for primary custody when the application of factors enumerated in 23 Pa.C.S.A. § 5328(a) weighed in favor of Mother?

2. Did the trial court abuse its discretion and err as a matter of law in granting Father's request for relocation when the application of the factors enumerated in 23 Pa.C.S.A. § 5337(h) did not establish relocation was in the best interest of the Child?

3. Did the trial court abuse its discretion and err as a matter of law in granting Father's request for relocation when he failed to demonstrate that relocation would be in the Child's best interest?

4. Did the trial court abuse its discretion and err as a matter of law when it essentially granted Father sole physical custody by requiring Mother to pay the costs of transportation?

Mother's Brief at 4 (cleaned up).

The relevant scope and standard of review governing these claims is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we

are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*D.K. v. S.K.*, 102 A.3d 467, 478 (Pa. Super. 2014) (citation omitted).

The Child Custody Act contains two sets of factors the trial court must consider, depending on the type of action. *See* 23 Pa.C.S.A. § 5328(a)(1)-(16); *see also* 23 Pa.C.S.A. § 5337(h). Section 5328(a) provides: "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including [factors 1 through 16.]" *Id.* Separately, Section 5337(h) enumerates ten factors a court must consider in determining whether to grant a proposed relocation (again giving weighted consideration to those factors which affect safety).

When the Legislature enacted Section 5337 to address relocation, it anticipated there would be a "relocating party" and a "non-relocating party." *D.K.*, 102 A.3d at 472. However, the relocation provisions set forth in Section 5337 do not apply when "both parents have lived in their current residences for some time, and neither parent is moving." *Id.* at 473. We held that in such a situation – where neither parent is seeking to relocate, and only the child would be moving to a significantly distant location – trial courts "should still consider the relevant factors of Section 5337(h) in their Section 5328(a) best interest analysis." *Id.* at 477-478. To put a finer point on it, Section

- 5 -

5328(a)(16) ("any other **relevant** factor") ropes in the Section 5337(h) factors; the Section 5337(h) factors are *per se* relevant to the Section 5328(a) best interest analysis.

Although the case before us is technically not a relocation case – as Father has resided in Germany for some time – the parties and the trial court correctly understood that consideration of both sets of factors, under Section 5328(a) and Section 5337(h) was required.

In her first and second appellate issues, Mother challenges the trial court's respective analyses under Sections 5328(a) and 5537(h). We address Mother's claims contemporaneously. The trial court delineated its reasons for the award when it issued its October 26, 2022 custody order. **See** 23 Pa.C.S.A. 5323(d). The trial court explained its findings under each factor listed in Sections 5328(a) and 5337(h), as well as the weight it afforded to those factors. **See** Order of Court, 10/16/22, at 7-19. On balance, most of the factors weighed in favor of Father. The court determined that Father was the parent more likely to encourage and permit contact with the other parent; that Father can better address the Child's need for stability; that he is the parent better suited to attend to the Child's daily needs; that Father is more willing to cooperate with Mother than vice versa; that moving to Germany would have a more positive impact on the Child than if the Child remained in the United States. **See generally id.**

Despite its determination that most factors favored Father, the trial court rightly understood that a custody analysis is not a scorecard. In its

Pa.R.A.P. 1925(a) opinion, the trial court explained that the motivating force behind its decision was its concern that the Child fell behind academically while in Mother's primary care. The Child had struggled with reading and had to repeat kindergarten. The school instituted a "504 plan" to support the Child. The trial court explained why it agreed with Father's position that the Child would do better in his care:

> The court finds credible Father's testimony that the Child spends an inordinate amount of time on the computer and watching YouTube videos when in Mother's care. He will also be able to provide the Child with opportunities to travel countries in Europe and to have opportunities not available to him presently. The Child will be able to be part of a program before and after school which will provide extra homework care, sports activities, as well as music, literary arts and sports.
>
> Father has shown a great interest in his children's progress in school, while Mother has not tracked what has been happening in the Child's education.
>
> Father plans on having the Child playing sports and getting him involved in team activities, while Mother has not been able to plan organized activities like soccer and basketball.
>
> […]
>
> In summary the Child's emotional and physical health will be greatly enhanced with Father as primary custodian. In addition, the Child's educational development will without a doubt be greatly improved.

Trial Court Opinion, 12/2/22 (T.C.O.), at 10-11; 12 (citation to the record omitted).

On appeal, Mother's presents a litany of examples from the record as to why any given factor should have been counted in her favor instead of

Father's. ***See generally*** Mother's Brief at 11-19. We need not restate those examples here; we do not disagree that these reasons could be persuasive. But whether Mother's reasons are persuasive is not our call to make. Mother's appellate argument fails because it does not appreciate our role, nor the deferential standard of review that we must employ.

It is not the role of this Court to "re-find facts, re-weigh evidence, and re-assess credibility." ***Wilson v. Smyers***, 285 A.3d 509, 520 (Pa. Super. 2022) (citation omitted). Our role is simply to review the record in light of the trial court's findings. Our deferential standard of review requires this Court to accept the findings of the trial court, so long as those findings are supported by competent evidence of record. ***Wilson***, 285 A.3d at 515.

Here, the competent evidence supporting the trial court's decision was primarily Father's testimony, which was deemed credible by the trial court. Mother does not argue that the court's decision lacked an evidentiary basis. The crux of her argument is that the trial court should have found her testimony more persuasive than Father's. This is not cause for us to find error or an abuse of discretion. The evidentiary record of a custody appeal will often support a conclusion different than the one reached by the lower court. That the trial court could have found for Mother is not a sufficient basis to reverse the court's decision. Deference must be given to the trial court, who viewed the parties, the witnesses, and the evidence firsthand. For these reasons, we conclude Mother's first and second appellate issues merit no relief.

In her third appellate issue, Mother claims the trial court erred when it determined that Father met his burden "to establish that an award of primary custody and/or relocation was in the minor child's best interests." *See* Mother's Brief at 9, 20. Our review of this claim necessitates that we clarify the burden at issue.

As we explained above, Section 5337 anticipates that one party seeks to relocate; when neither party seeks relocation the provisions of Section 5337 generally do not apply. *D.K.*, 102 A.3d at 472-474. The exception, of course, is Section 5337(h). *Id*. With this in mind, we note that 5337(i) (relating to the burden of proof in a relocation matter) is not the precise burden involved here.[5] Instead, "each parent shares the burden of proving, by a preponderance of the evidence, that an award of custody to him or her would serve the best interests of the Child." *Graves v. Graves*, 265 A.3d 688, 698 (Pa. Super. 2021).

---

[5] Section 5337(i) provides:

> (1) The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h).

> (2) Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation.

23 Pa.C.S.A. § 5337(i).

However, in the type of case at issue here – where only the child stands to move a significant distance – the burden each parent shoulders is substantially similar to that of Section 5337(i). Put another way, Father requested primary custody so the Child could move from Mother's home in the United States to his home in Germany; thus, Father had the burden to prove that the move would be in the Child's best interest. Mother, by contrast, had the burden of proving that an award in her favor – not Father's – was in the Child's interest.

Having clarified the burden, we return to Mother's substantive argument. She claims that Father failed to present any evidence to support a change from the *status quo*. **See** Mother's Brief at 23. We disagree. As mentioned above, Father provided sufficient testimony about how and why the Child's life would improve if Father had primary custody of the Child in Germany. He further testified as to why the continuation of the *status quo* was not in the Child's best interests. The trial found Father's testimony to be credible and afforded this testimony dispositive weight. In short, the trial court properly found that Father had met his burden. Mother's third claim warrants no relief.

In her final appellate issue, Mother claims that the trial court abused its discretion by requiring her to pay for the cost for the Child's transportation. Mother explains that she cannot afford to pay for the Child's international travel, as her income is comprised of social security disability resulting from her amputation. Because she cannot afford to fly the Child between the United

States and Germany to exercise her partial custody, Mother argues that the trial court effectively awarded Father sole custody. *See* Mother's Brief at 22, 25.

Our discussion starts by noting the apparent confusion about how the transportation costs were allocated. We begin with the plain text of the October 26, 2022 custody order. Paragraph 4 of the order provides Mother with three separate periods of partial custody each year:

- Spring break (or Spring holiday, or Mother's Day)
- Summer break (for two months)
- Winter break (or alternatively, Thanksgiving, at Mother's choice).

*See* Order of Court, 10/16/22, at ¶ 4(a)-(c).

Thus, the trial court's custody order proposes three international roundtrips each year. Paragraph 6 of the custody order designates who is responsible for the transportation costs:

> **Transportation Costs:** The ***immediate*** costs of transportation of A.C.W. to travel to Germany shall be paid by Father. Father shall be solely responsible for costs of transportation of the child ***back to Father's residence*** at winter break. In the alternative, Father shall be solely responsible for costs of transportation of the Child back to Father's residence at Thanksgiving break.

Order of Court, 10/16/22, at ¶ 6 (emphasis added).

At the time of the trial court's custody decision, the Child resided in the United States with Mother. Father's responsibility to cover the "immediate costs of transportation" seems to mean that Father had to pay for the Child's

- 11 -

initial flight to Germany to effectuate the formal transfer of custody. No other transportation costs could be construed as "immediate," except the first flight following the court's decision. This raises the question, who is responsible to pay for the Child's annual custody exchanges thereafter.

Although the provision is silent to Mother's responsibilities, when read in conjunction with Paragraph 4 (Custody Schedule), Paragraph 6 (Transportation Costs) implies that Mother is responsible for all transportation costs **except** the annual trip back to Germany following winter break. In other words, she would have to pay for: the roundtrip cost to effectuate her custody during spring break; the roundtrip cost to effectuate her custody during summer break; and the cost of the Child's flight to the United States to begin Thanksgiving/winter break. In short, Paragraph 4 makes Mother responsible for 5 out of the Child's 6 journeys.

But when the trial court addressed Mother's claim in its Rule 1925(a) opinion, its reasoning suggested other possible cost allocations. The Rule 1925(a) opinion states:

> The court's order requires Father to provide transportation costs of the Child to Germany **and** for Thanksgiving and winter breaks.[6] Mother has responsibility to pay transportation costs **to her residence**. This is a reasonable arrangement. It is clearly not prohibitive and does not amount to awarding Father sole physical custody. Mother did not present any evidence as to transportation costs

---

[6] We clarify that the custody order permits Mother to exercise custody on **either** Thanksgiving or winter break. She is not entitled to both.

which would impact upon her ability to exercise her custodial rights.

T.C.O. at 13 (footnote added) (emphasis added).

This excerpt could be interpreted as: Mother is only responsible for Child's flights to the United States (3 out of the 6 journeys); or, that Mother is only responsible for the Child's flights to the United States in the spring and summer, making Father responsible for all the flights to Germany *as well as* the roundtrip cost of the Thanksgiving/winter break custody time (this would make Mother only responsible for 2 out of the 6 journeys); or, that Father is responsible for the flights to and from Germany, but that Mother has to pay the cost of transporting the Child between her airport in the United States and her residence.[7]

In his Brief, Father seems to aver that Paragraph 6 made him responsible for *all* the transportation costs: "[T]he trial court made it clear in its order that Father would bear the costs of transportation to effectuate Mother's periods of custody with [the Child]." *See* Father's Brief at 6.[8] Father's assertion would resolve the question before us. Tempting as it is to

_____

[7] We note that several airports might be available the parties, which then creates still more confusion as certain airports might result in cheaper flights for Father, but longer and thus more costly drives for Mother.

[8] Notably, all the aforementioned possibilities differ from Father's original proposal. Father testified that he proposed paying for the Child's roundtrip flight to effectuate Mother's summer custody, but that Mother should be responsible for half of the cost for the other custody times. *See* N.T. (Day 1), at 58, 60.

agree with Father's averment, we simply cannot overlook the plain and unambiguous terms of the October 26, 2022 order. As it stands, Paragraph 6 makes Mother responsible for all travel except for the flight back to Germany following Thanksgiving/winter break.

The question remains, is such an obligation an abuse of discretion. After review, we conclude that it is. In our discussion of Mother's previous appellate issues, we emphasized the nature of our standard of review. Deferential though it is, that same standard of review permits this Court to make our own inferences and deductions. "Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." *See D.K.*, *supra.*

To the trial court's point, we acknowledge that the record is devoid of certain particularities. The parties' exact incomes are not in the record;[9] neither is there any testimony about exact travel expenses. Still, the record includes some details on these subjects. The record indicates that Mother used to work, but that she is now "deemed disabled" following her illness and resulting complications. *See* N.T. (Day 1) at 174. The extent of her disability was unclear, although Mother was still receiving treatment at Walter Reed at the time of the hearing. She further testified that she was still unable to drive.

---

[9] In her Brief, Mother claims that her social security disability payments are her only source of income. *See* Mother's Brief at 15. That information does not appear in the record. Father testified that his income from the Army Reserves is in accordance to a pay scale, but did not present an exact figure, nor did Father testify what he earns as a civilian employee of the Department of Defense.

***See*** N.T. (Day 2) at 36. As for the cost of international travel, Father testified that the price of international flights, though variable, was typically expensive – particularly around the holidays (which is when the parties' custody exchanges take place). ***See*** N.T. (Day 1) at 88.

Based on this record, the trial court opined that the transportation costs imposed onto Mother were not prohibitive. As we are not bound by the court's inferences and deductions, we disagree. The international transportation costs unique to this case are extraordinary in comparison to the costs associated with interstate custody exchanges, to say nothing of typical custody exchanges. Add the fact that parties have dramatically different earning capacities. Add that the plain terms of the order require Mother to pay for nearly all the Child's travel. The result is a provision that is manifestly "unreasonable as shown by the evidence of record." ***See D.K.***, ***supra.***

The trial court carefully crafted Paragraph 4 to achieve a custody schedule that would be in the Child's best interests; as written, the Child would not go without seeing Mother for more than three or four months at a time. However, the trial court cannot achieve the intended result of its order, if Mother cannot afford the transportation costs set forth in Paragraph 6. Even one forgone opportunity for partial custody undermines the overall custody arrangement. Thus, Paragraph 6 constitutes an abuse of discretion, because it inhibits Mother's full compliance with Paragraph 4. The order is at odds with itself.

For these reasons, we vacate Paragraph 6 of the October 26, 2022 order, while leaving the remainder of the order in effect. We remand for the trial court to reasonably, and clearly, allocate the transportation costs in a manner that ensures the parties can effectuate the court's intended custody schedule.

In sum: we discern no error or abuse of discretion with the trial court's application of the factors enumerated in Sections 5328(a) or 5337(h); and we further conclude that the trial court properly determined that Father met his burden of proof that an award of primary physical custody, in Germany, was in the Child's best interests. However, we conclude that Paragraph 6 in the October 22, 2022 order constituted an abuse of discretion. As written, the provision obligated Mother to pay for nearly all the Child's transportation costs. The provision was unreasonable as shown by the evidence of record, because Mother would be unable to abide by Paragraph 4 of the order without undue difficulty.

Order affirmed and part and vacated in part. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/09/2023