J-S05032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JUSTIN M. CAROSI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KATELYN J. CAROSI | : | |
| | : | |
| Appellant | : | No. 1066 WDA 2023 |

Appeal from the Order Entered August 9, 2023
In the Court of Common Pleas of Cambria County
Civil Division at No. 2017-0937

BEFORE:  PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:               **FILED: April 11, 2024**

Katelyn J. Carosi (Mother) appeals from the order partially granting and partially denying her request to relocate with the parties' son, B.C. (Child). Upon review, we affirm.

*Factual & Procedural History*

Mother and Justin M. Carosi (Father) married in August 2014, and Child was born in November 2015.  The parties separated in 2017.[1]  On August 7, 2017, the parties consented to a custody order which provided for their equally shared legal and physical custody of Child.

On March 29, 2023, Mother filed a notice of relocation, followed by a petition for relocation on April 14, 2023.   Mother sought to move

_____

[1] The parties were divorced by decree entered October 8, 2020.

approximately 20-25 miles to Carrolltown, Pennsylvania; she also sought to enroll Child in the Cambria Heights School District.

In response, Father filed a counter-affidavit objecting to Mother's relocation. On April 28, 2023, Father filed a counterclaim for primary physical custody of Child. Father specifically requested that Child remain enrolled in the Forest Hills School District.

The trial court held a hearing on July 31, 2023. The trial court heard testimony from four witnesses: Mother, Father, Danielle Vivian (Child's paternal aunt), and Paula Carosi (Child's paternal grandmother). The trial court made the following findings:

> Mother is 30 years old. N.T.[, 7/31/23, at] … 4. Father is 36 years old. [**Id.** at] … 106. The parties dated in high school and married on August 23, 2014. **Id.** [at] … 5-6. They separated [in] 2017, when Child was [around] a year old. **Id.** [at] … 6.
>
> The parties negotiated a Custody Stipulation and Order dated August 7, 2017. [**Id.** at] 6; **see also** DEFENDANT'S EXHIBIT 1 (JULY 31, 2023). Pursuant to the Order, the parties shared legal custody and shared physical custody on a week-about schedule, exchanging custody on Sundays at 6:00 P.M. N.T. [at] … 6-7. The non-custodial parent had custody on Wednesday during the other parent's week of custody. **Id.** [at] … 7.
>
> The parties followed the Custody Stipulation and Order until Child reached school age. [**Id.** at] … 7.
>
> When Child reached school age, Father was a section foreman at Rosebud Mining[,] working first and second shifts. [**Id.** at] … 10. First shift required Father to be away from home from 4:00 or 5:00 A.M. until 3:00 or 4:00 P.M. **Id.** [at] … 10-11. Father was unable to get Child ready for school when he worked first shift. **Id.** [at] … 10. Second shift required Father to be at work from 1:00 or 2:00 P.M. to 11:00 [P.M.] or 12:00 [A].M. **Id.** [at] … 11. If Father worked second shift, he was unable to care for Child after school. **Id.** [at] … 10.

When Child entered kindergarten, Mother exercised custody on most school nights and transported Child to school in the mornings. [*Id.* at] … 7-8, 86; *see also* DEFENDANT'S EXHIBIT 2. The parties maintained this modified custody schedule when Child attended kindergarten and first grade (the 2020-2021 and 2021-2022 school years). N.T. [at] … 8-9, 12-13.

Mother lived with her grandmother (Child's great-grandmother) [("Maternal Great-Grandmother")], in Salix, Cambria County, for four years. [*Id.* at] … 16. The residence is in the Forest Hills School District, where Child has attended school.

At all relevant time periods, Father has resided in Sidman, Cambria County, in the Forest Hills School District. [*Id.* at] … 17. Father's residence is three to four miles from Maternal Great-Grandmother's home. *Id.*….

Since December 2020, Mother has been dating her current boyfriend, Adam Hite ["Boyfriend"]. [*Id.* at] … 22. Mother introduced Boyfriend to Child in September 2021. *Id.* [at] … 22-23. Mother and Boyfriend have no plans to marry. *Id.* [at] … 96.

Boyfriend is a truck driver for Hite Trucking (his family's business) and a farmer with his uncle. [*Id.* at] … 24, 31.

In 2022, Mother became pregnant with Boyfriend. [*Id.* at] … 13. They announced the pregnancy to their families and Child on Christmas Day 2022. *Id.* [at] … 13-14. Father learned of the pregnancy on December 25, 2022. *Id.* [at] … 14.

In January 2023, the parties returned to the shared custody schedule outlined in the Custody Stipulation and Order dated August 7, 2017. [*Id.*] Father was no longer working at that time because of a knee injury suffered in October 2022. *Id.*

Mother filed the instant Notice of Relocation on March 29, 2023.

Mother and Boyfriend had their child, R.H. ["Half-Sister"], in May 2023. [*Id.* at] … 22.

Mother has been employed at UPMC Altoona Hospital for approximately one year. [*Id.* at] … 18. Mother is a Registered Nurse. *Id.*

Mother was on maternity leave for 11 weeks and [testified she] return[s] to work on August 10, 2023. [*Id.*] Mother's typical shift is 8:00 A.M. to 4:30 P.M. *Id.* She is required to work six late

shifts per month, which begin at 10:00 A.M. or later. *Id.* Mother has some control over her work schedule. *Id.*; *see also* DEFENDANT'S EXHIBIT 3.

Mother requests permission to relocate to Boyfriend's residence at 609 Dutch Road in Carrolltown, Cambria County, in the Cambria Heights School District. [*Id.* at] … 21. Mother also seeks primary physical custody during the school year and alternating weeks of custody during the summer. *Id.* [at] … 35.

Boyfriend's three-bedroom home is situated on three acres of property. [*Id.* at] … 24-26; *see also* DEFENDANT'S EXHIBIT[] 5. Boyfriend's uncle owns property behind the home. [N.T. at] 25-26.

Mother's name is not on the deed to Boyfriend's property. [*Id.* at] … 96.

Mother and Child resided at Boyfriend's home during the summer of 2023, although Mother claims the move was "not permanent." [*Id.* at] … 27.

Mother's proposed residence is 26 miles from her prior residence with Maternal Great-Grandmother. [*Id.* at] … 21; *see also* DEFENDANT'S EXHIBIT 4. Mother's proposed residence is 22 miles from Father's home. N.T. [at] … 21-22.

If Mother relocates to Carrolltown and works full-time, she claims she would be unable to transport Child to Forest Hills, drive R.H. to daycare, and arrive at work on time. [*Id.* at] … 89-90. Mother admits it would be more feasible to transport Child to Forest Hills if she works part-time, which is planned in November 2023. *Id.* [at] … 92-93.

Mother and Father agree that Boyfriend has a positive relationship with Child. [*Id.* at] … 23, 112.

Father has been employed by Rosebud Mining Company for fourteen years. *Id.* [at] … 106. He is currently on Workers Compensation. *Id.* [at] … 116.

Father has been in a relationship with Katelyn Grove ["Girlfriend"] for a total of three years, with a one-year break after the first year. [*Id.* at] … 139-[]40. Girlfriend has two boys, ages 12 and [8], who attend the Westmont Hilltop School District. *Id.* [at] … 140, 141. Girlfriend and her children spend "a lot of time" at

Father's home. *Id.* Child gets along with Girlfriend's children. *Id.* [at] … 140. Father and Girlfriend plan to marry. *Id.*

Child attended the Forest Hills School District for pre-school, kindergarten, and first grade. [*Id.* at] … 61.

Trial Court Opinion (TCO), 10/26/23, at 4-7 (paragraph numbers and footnotes omitted).

At the close of the hearing, the trial court stated that it would take the matter under advisement. On August 9, 2023, the trial court entered the order from which Mother appeals. The trial court contemporaneously issued an opinion with the order in which the court recounted "a telephone conference with counsel on August 2, 2023." Trial Court Opinion, 8/9/23, at 1. The conference was not recorded. *Id.* at 1 n.1. However, the court stated that it discussed statutory relocation and custody factors during the conference. *Id.* (citing 23 Pa.C.S. §§ 5337(h), 5328(a), and 5323(d)). *Id.* Further,

> [a]fter considering all relevant factors, and giving weighted consideration to those factors which affect the safety of [C]hild, th[e] [c]ourt found that [C]hild's best interests require Mother's request for relocation to be granted[,] but [C]hild to continue attending the Forest Hills School District. The [c]ourt directed the parties to negotiate a mutually acceptable custody schedule within 10 days.
>
> By letters dated August 3, 2023, both attorneys outlined the terms of the parties' agreement. The [trial c]ourt mark[ed] and admit[ted] the documents as Court Exhibit 1 (letter from James Pappas on behalf of Father) and Court Exhibit 2 (letter from Lauren Darbouze on behalf of Mother).

*Id.* at 1-2.

The record contains counsels' letters to the trial court. Both letters indicate that counsel served copies of their letters on their respective clients

and opposing counsel. Although the parties did not enter into a formal agreement, the letters reflect their agreement with maintaining the shared custody schedule established in 2017, and Child's continued enrollment in the Forest Hills School District. The two-paragraph letter from Father's counsel states:

> Counsel[,] after discussion with their respective client[s,] agree that the order should remain the same as far as the current custody schedule goes. The only change in the order would be [that Mother] would be responsible during her week for seeing that [C]hild attends the Forest Hills School District.
>
> My client[, Father,] would also request the following: 1. The order provide that the custodial exchanges be at Summerhill[,] PA Dollar General which is a lighted area with cameras[;] 2. A provision that [Mother] ensure [C]hild attends all extracurricular activities and sporting events.

Court Exhibit 1 (single page).

Similarly, the one substantive paragraph in the letter from Mother's counsel states:

> Regarding the aforementioned matter, I have discussed the relocation matter with my client[, Mother,] and opposing counsel, James Pappas, Esquire. [Mother] is grateful for the opportunity to relocate at this time and will ensure she makes the Forest Hills School District work during her periods of custody. Further, my client is requesting that the parties [be] required to sign up for, and use[,] AppClose for all communication.

Court Exhibit 2 (single page).

In the August 9, 2023 order, the trial court granted Mother permission to relocate, ordered Child's continued enrollment in the Forest Hills School District, and specified that Mother "be responsible for transporting Child to the

- 6 -

Forest Hills School District." Order, 8/9/23, at 2. The court further ordered

the parties to "continue to abide by the Custody Stipulation and Order dated

August 7, 2017." *Id.* As counsel requested, the court ordered:

> During Mother's periods of custody, she shall ensure that Child attends all school activities, extracurricular activities, and sporting events.
>
> Unless otherwise agreed, all custody exchanges shall occur at the Dollar General in Summerhill, Pennsylvania, which has a lighted parking lot with cameras.
>
> The parties shall register for and use AppClose for all communication.

*Id.* (numbering omitted).

On September 7, 2023, Mother timely filed a notice of appeal and

Pa.R.A.P. 1925(b) concise statement. She presents the following questions

for review:

> I. Did the trial court abuse its discretion and commit an error of law in granting Mother's request to relocate with [C]hild but refusing to change [the] school district of [C]hild, which in turn significantly burdens Mother with regard to transportation and negatively affects [C]hild?
>
> II. Did the trial court abuse its discretion and commit an error of law when it failed to consider all of the evidence and contradictory testimony related to Mother's relationship history?
>
> III. Did the trial court abuse its discretion and commit an error of law by failing to consider and establish a substitute custody schedule that will adequately foster an ongoing relationship between [C]hild and Father?
>
> IV. Did the trial court abuse its discretion and commit an error of law in failing to consider Father's true motivation in opposing Mother's relocation?

Mother's Brief at 4-5.

*Discussion*

In reviewing Mother's issues,

our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**White v. Malecki**, 296 A.3d 1210, 1213 (Pa. Super. 2023) (citation omitted).

Before proceeding to the merits of Mother's issues, we address whether Mother preserved her issues before the trial court, and her ostensible consent to Child's enrollment in the Forest Hills School District. **See** Court Exhibit 2.

As explained above, the trial court conducted a telephone conference on August 2, 2023. The following day, counsel submitted letters to the trial court. Mother's counsel stated that counsel had discussed "the relocation matter with [Mother] and [Father's counsel]." Court Exhibit 2. Counsel further relayed that Mother would "ensure that she makes the Forest Hills School District work during her periods of custody." **Id.** The trial court entered its order on August 9, 2023.

"Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Here, Mother failed to object to the custody order or raise any issue about the validity of the order with the

trial court. Therefore, we conclude she has waived her issues challenging the order and cannot raise them for the first time before this Court. ***See id.***

In addition, Mother has waived her issues by consenting to the trial court's order. "Ordinarily, a party who consents to … a judgment or order cannot appeal therefrom." ***Brown v. Commonwealth Dep't of Health***, 434 A.2d 1179, 1181 (Pa. 1981) (citation omitted); ***see also Karkaria v. Karkaria***, 592 A.2d 64, 71 (Pa. Super. 1991) ("A party who has acquiesced in an order or judgment will not later be heard to challenge it.") (citation omitted). Because Mother agreed to the court's order, she is prohibited from challenging it on appeal. Thus, we also find waiver based on Mother's acquiescence to the order.

Even in the absence of waiver, Mother's issues would not merit relief. The Child Custody Act sets forth factors which a trial court must consider in custody and relocation cases. ***See*** 23 Pa.C.S. § 5328(a)(1)-(16); 23 Pa.C.S. § 5337(h)(1)-(10). Section 5328(a) provides: "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including [factors 1 through 16.]" 23 Pa.C.S. § 5328(a). Section 5337(h) lists 10 factors a court must consider in determining whether to grant relocation (while also giving weighted consideration to factors which affect safety). When one party proposes relocation and the other seeks to modify custody, the trial court must consider both sets of custody factors. ***See E.D. v. M.P.***, 33 A.3d 73, 82 (Pa. Super. 2011).

- 9 -

Throughout her arguments, Mother repeatedly challenges the weight the trial court placed on testimony and evidence. It bears repeating that this Court defers to the trial court on issues of credibility and weight of the evidence, and we do not reweigh evidence. **White**, 296 A.3d at 1213; **see also** TCO at 11 (trial court's stating, "Father opposes Mother's relocation for several **credible** reasons") (emphasis added). It is well-settled that "parties cannot dictate the amount of weight the trial court places on evidence." **A.V. v. S.T.**, 87 A.3d 818, 820 (Pa. Super. 2014) (citation omitted).[2]

*1. School District and Transportation*

In her first issue, Mother argues the trial court erred by "refusing to change [the] school district of [C]hild, which in turn significantly burdens Mother with regard to transportation and negatively affects [C]hild." Mother's Brief at 17. Mother claims that by "refusing to change [C]hild's school district,

---

[2] Although our review is broad and deferential, child custody "is fluid and trial courts are free to modify custody orders where modification serves a child's best interest in light of the best interest factors outlined in 23 Pa.C.S. § 5328." **K.D. v. E.D.**, 267 A.3d 1215, 1223 (Pa. Super. 2021).

> Pursuant to the Child Custody Act, a custody order may be **modified at any time**, provided the modification is in the best interest of the child. **See** 23 Pa.C.S. § 5338(a) ("Upon petition, a court may modify a custody order to serve the best interest of the child."); 23 Pa.C.S. § 5328 (relating factors to determine child's best interest). As we explained in **Holler v. Smith**, 928 A.2d 330, 331–32 (Pa. Super. 2007), "[c]ustody matters are a special creature. … Unlike other actions which have a clear beginning, middle, and end, custody orders may be repeatedly modified."

**Id.** at 1224 (emphasis in original).

the Order [] more so punishes Mother for seeking relocation than it addresses [C]hild's best interests." *Id.* at 18. Mother concedes "it [is] more feasible to transport [C]hild to Forest Hills if she works part time, which is planned in November 2023." *Id.* at 19. However, she asserts Father "would have a much easier time" transporting Child to the Cambria Heights School District. *Id.* Mother concludes the order "significantly burdens Mother with regard to transportation and disregards [C]hild's relationship with [his half-sister,] R.H.[,] and his established patterns of care." *Id.* at 23.

The trial court found otherwise, and specifically concluded "Child's best interests would be served by granting Mother's request for relocation but allowing Child to continue attending the Forest Hills School District." TCO at 3. The trial court addressed the statutory custody and relocation factors. *Id.* at 7-24; 23 Pa.C.S. §§ 5337(h)(1)-(10), 5328(a)(1)-(16). Regarding school districts, the trial court explained:

> Mother believes Child could make friends in the Cambria Heights School District if she is permitted to relocate. N.T. [at] … 64-65. The [c]ourt finds this testimony to be self-serving and less relevant than the availability of family in the Forest Hills School District. Mother's proposed relocation itself may be best for Child, because Child has essentially been living with Mother and Boyfriend in Carrolltown for the summer. However, relocating Child from his current school district where his [friends and cousins] attend — for the promise of attending school together with Half-Sister in six years — would likely cause significant upheaval for Child.
>
> ***
>
> Child has a loving relationship with [R.H., his] Half-Sister, who is an infant. Child enjoys being a big brother. This factor favors

Mother's request for relocation. It does not favor Mother's request for a change in school districts because of the significant age difference between the [two] children and the nearly six years until R.H. will attend school.

\*\*\*

Mother's proposed relocation is based on her fourth serial relationship [in six years], with no plans to marry and no legal guarantee of housing. The relationship between Mother and Boyfriend — as it currently stands — is currently beneficial to Child and supports Mother's proposed relocation. But it would be unwise to uproot Child from his known school district and his [friends and cousins who attend the same school] until there is more evidence that Mother's relationship will last.

\*\*\*

Mother's proposed residence in Carrolltown is 22 miles from Father's home []. N.T. [at] … 21. … This factor … does not impact the choice-of-school issue.

TCO at 9, 15, 17, 20. Also, in an apparent reference to the August 3, 2023 letter from Mother's counsel, the trial court noted that "Mother acknowledged she could ensure Child's attendance at the Forest Hills School District." ***Id.*** at 24.

We would conclude that the record supports the trial court's findings. For example, Mother testified that she has control over her work schedule. ***See, e.g.***, N.T. at 19 (Mother's stating she has "control over [a] later start"). She stated that in November 2023, she would be "going part-time," which she described as "three days one week and two days the next." ***Id.*** at 29-30; ***id.*** at 92. Mother also testified that Maternal Great-Grandmother lives "three or

four miles" from Father, and has been a resource for Child's care.[3]  N.T., 7/31/23, at 17.   Mother stated she did not "utilize [Maternal Great-Grandmother] more than I have to.  I only do it if I have to work or something, but I always made sure it was very smooth."  *Id.* at 16.  In the past, Maternal Great-Grandmother "would take [Child] down to the school bus … [o]r if [Mother] was working a later shift, she would get him off the bus and [Mother] would be right home."  *Id.* at 16-17.  Mother also stated she "would love to be an ICU nurse, but they work crazy shifts.  Because I have a son and now a daughter, I picked a job that would better accommodate my child, my children, [and] give them a better opportunity to be with me, as opposed to … working crazy shifts, trying to find childcare []."  *Id.* at 73-74.

Father testified to frequently interacting with Maternal Great-Grandmother "over the years of shared custody."  *Id.* at 112.  He stated he gets along well with her.  *Id.*  Father also testified that he had not met Boyfriend, but believed "there's a really good relationship [between Boyfriend and Child, because Child] says nothing but good things about this guy."  *Id.*  Father expressed that his "only concern is I wish [Child] could be in a stable environment, [], because there [have been] times he's asked me [], Daddy, where am I going to sleep tonight?"  *Id.*  Father opposed relocation because "anywhere [Mother has] been [with a boyfriend] has never been stable."  *Id.*

---

[3] Father testified to his belief that Maternal Great-Grandmother "is in her 70s" and healthy.  *Id.* at 143.

at 143. Father opined: "I don't think it's going to be a permanent relocation." *Id.* at 145.

Father further testified that in addition to Maternal Great-Grandmother living nearby, Mother's father "lives within walking distance of the [Forest Hills] elementary school," and Father's sister lives two miles from Father. *Id.* at 113. Father's mother also lives close and helps with Child's care. *Id.* at 117. After Father was injured at work, he began receiving worker's compensation; he expected he would be unable to work for "another six months to a year." *Id.* at 143.

According to Father, Child is close friends with neighborhood children and three of his male cousins, who are similar ages. *Id.* at 123. Child and his cousins frequently play together and have sleepovers at each other's homes. *Id.* at 124. Father stated that Child has "been raised in the Forest Hills area. All his family and friends are there. Everyone is close to school if there's an emergency." *Id.* at 146.

Father's sister, Danielle Vivian, confirmed that she lives near Father, and her three sons have a "close" and "unique" bond with Child. *Id.* at 163. She stated that Child "has become more like my fourth child." *Id.* Ms. Vivian described Father as "a great father," who is "patient" and "present." *Id.* at 164. She testified that Father "provides for [Child,] not only financially, but he provides and has provided security, stability, [and] support…." *Id.*

We would conclude that the evidence supports the trial court's determination that Child's enrollment in the Forest Hills School District serves

Child's his best interests. We accept the trial court's findings when they are supported by the evidence, and defer to the trial court regarding credibility. *See C.A.J. v. D.S.M.*, 136 A.3d 504, 506 (Pa. Super. 2016). Also, we may not reject the trial court's reasonable conclusions. *White*, 296 A.3d at 1213. Accordingly, we would discern no error in the trial court's determinations concerning Child's school district and Mother's responsibility for transportation.

*2. Mother's Relationship History*

In her second issue, Mother argues the trial court erred by "fail[ing] to consider all of the evidence and contradictory testimony related to Mother's relationship history." Mother's Brief at 24. Mother asserts "the trial court clearly put a great deal of weight on its findings that Mother has instability in her living arrangements and relationships[, and] said findings were unreasonable." *Id.* at 25. She states:

> While Mother did have three (3) boyfriends between her separation from Father and her current relationship with [Boyfriend], Mother did not live with any of them. Mother experienced abuse, both physical and psychological, at the hands of two (2) of the men she dated after separating from Father, but has not experienced any of the same issues since she stated dating [Boyfriend]. Mother and [Boyfriend] have been together for nearly three (3) years and together the two have a wonderful, steady, positive relationship. To not confuse and upset [C]hild, Mother waited nine (9) months to introduce him to [Boyfriend] after they began dating. [Boyfriend] and [C]hild have since developed a great relationship and enjoy spending time together. … Based upon the testimony given at the July 31, 2023 Relocation Trial, it is unclear how the trial court determined that "Mother's relationship history creates concern about the longevity [of her and Boyfriend's] union."

- 15 -

Mother's Brief at 25-26 (citations to notes of testimony omitted). Mother also claims the trial court "seemingly disregarded" information about "inconsistency in Father's relationship with his girlfriend." *Id.* at 26.

Mother disagrees with the trial court's conclusions, but there is evidence to support them. Again, with "issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *E.C.S. v. M.C.S.*, 256 A.3d 449, 457 (Pa. Super. 2021) (citation omitted).

Father testified that he has lived in the same place and "only dated two" women since he and Mother separated. N.T. at 157. The trial court noted Father's testimony about his belief that Mother's relocation "will not be permanent because of Mother's history of post[-]separation[,] serial relationships." TCO at 11 (citing N.T. at 145).

Referencing both parties' testimony, the trial court found:

Mother engaged in a ten-month relationship with [A.H.] after the parties' separation. N.T. [at] … 181. [A.H.] choked Mother in front of Child and slapped Child in the face. *Id.* [at] … 109. Mother denies that Child was present, *id.* [at] … 181-[]82, although the [t]rial [c]ourt does not deem this testimony to be credible in light of Mother's assertions to Father. Mother ended the relationship. *Id.* [at] … 109.

TCO at 12. The court concluded:

Mother has injected significant instability into Child's life with her serial relationships after the parties['] separation. Her introduction of four men in six years has caused confusion for the nearly-eight-year-old [C]hild. Although Mother's current relationship has lasted longer than the others, it lacks security because Mother has no plans to marry and Boyfriend has not added her name to the property. Notwithstanding this, both

Mother and Father acknowledge that Boyfriend is a positive influence on Child. This factor favors Mother's request to relocate but not the proposed change in school districts.

*Id.* 14-15.

The record supports the trial court's findings, and the court's conclusions regarding Mother's relationship history are not unreasonable. Thus, the trial court did not err in factoring Mother's relationship history in its overall determination regarding Child's best interests. *See* 23 Pa.C.S. § 5328(a)(1)-(16); 23 Pa.C.S. § 5337(h)(1)-(10). Mother's issue concerning her relationship history would not merit relief.

*3. Substitute Custody Schedule*

Mother next assails the trial court's failure to "establish a substitute custody schedule that will adequately foster an ongoing relationship between [C]hild and Father." Mother's Brief at 28. Circling back to her first issue, Mother emphasizes her testimony about a "custody schedule that would allow Father to continue exercising similar custody time if her relocation was granted **and [C]hild was permitted to attend [the] Cambria Heights [School District]**." *Id.* at 30 (emphasis added).

The trial court explained its rationale for the August 9, 2023 order. *See* TCO at 7-24. In general, the trial court found:

Mother's proposed residence in Carrolltown is 22 miles from Father's home and 20-25 miles from Mother's residence[, where she previously lived,] with [Child's] Maternal Great-Grandmother. N.T. [at] … 21. The increased distance between the parties does not significantly limit the available custody schedules, including an equal shared custody schedule. This factor favors Mother's

- 17 -

proposed relocation, but it does not impact the choice-of-school issue.

*Id.* at 20.

We discern no error, as Mother fails to "appreciate [this Court's] role, [and] the deferential standard of review that we must employ." *White*, 296 A.3d at 1215. Similar to this case, in *White*, we explained:

> On appeal, Mother presents a litany of examples from the record as to why any given factor should have been counted in her favor instead of Father's. *See generally* Mother's Brief at 11-19. We need not restate those examples here; we do not disagree that these reasons could be persuasive. But whether Mother's reasons are persuasive is not our call to make.

*Id.* Mother's third issue would not merit relief.

*4. Father's Motivation*

In her fourth and final issue, Mother argues the trial court erred by "failing to consider Father's true motivation in opposing Mother's relocation." Mother's Brief at 32. Mother claims:

> [T]he trial court failed to acknowledge Father's true motivation in opposing Mother's relocation in that he was angry and jealous that Mother and [Boyfriend] were dating and had a child together. While Father denied the same playing a role in opposing Mother's relocation, Mother provided substantial testimony supporting her belief.

*Id.* at 33. Again, Mother's issue involves the trial court's role as factfinder and this Court's deferential review. "Appellate interference is unwarranted if the trial court's consideration of the Child's best interests was careful and thorough, and we are unable to find any abuse of discretion." *A.V.*, 87 A.3d

at 820 (citation omitted).  The evidence in this case supports the trial court's conclusions.  *Id.*  Upon review, we discern no error.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/11/2024