J-S26032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JAMUS BRYANT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| STACY ANGEL, THOMAS ANGEL AND | : | No. 461 MDA 2024 |
| DEBORAH ANGEL | : | |


Appeal from the Order Entered February 29, 2024
In the Court of Common Pleas of York County Civil Division at No(s):
2024-MI-000043

BEFORE:  PANELLA, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM by KUNSELMAN, J.:          **FILED: OCTOBER 9, 2024**

Appellant Jamus Bryant (Father), *pro se*, appeals the order issued by the York County Court of Common Pleas, which denied his "Verified Petition for Emergency Writ of Habeas Corpus Relief and Injunctive Relief."  Father sought enforcement of a temporary custody consent order, issued in 2020 by a court in Colorado, involving Appellee Stacy Angel (Mother) and their five-year-old daughter, J.O.B. (the Child).  Although Mother and the Child now reside in Ohio, Father brought the instant action in Pennsylvania, where Appellees Deborah and Thomas Angel (Maternal Grandparents) reside, because Mother designated them to be temporary caregivers during her deployment with the United States Air Force.  Ultimately, the trial court determined it lacked authority under the Uniform Child Custody and

Enforcement Act (UCCJEA) to grant Father's request. *See* 23 Pa.C.S.A. §§ 5401-5482. Father appealed, and after review, we affirm.

The relevant background is as follows. The Child was born in Fall 2018. Custody litigation between Mother and Father began in Colorado. In 2020, Mother and Father submitted a "Stipulation Concerning Temporary Parenting Time and Decision Making," which provided the parents with shared custody on an interim basis. The stipulation was subsequently approved by a Colorado magistrate.[1]

Sometime thereafter, Mother relocated with the Child to Ohio. Mother is a captain in the United States Air Force; she is stationed at the Wright-Patterson Air Force Base near Dayton. Mother was deployed overseas in October 2023. Maternal Grandmother, a resident of York, Pennsylvania, temporarily relocated to Ohio to care for the Child while Mother was away. Evidently, Father tried to bring a custody action in Ohio, but that action was dismissed on procedural grounds.[2]

In January 2024, Father brought a custody action in York County, Pennsylvania. It appears Father moved to York, Pennsylvania only to file this action. Father sought to register the 2020 stipulation and have it enforced by

_____

[1] The parties' 2020 stipulation meets the definition of a "child custody determination," as defined by the UCCJEA. *See* 23 Pa.C.S.A. § 5402.

[2] The length of Mother's deployment was unclear. In their Appellee Brief, Maternal Grandparents claim that Mother has returned to Ohio, resumed custody, and that litigation has continued there. In response to a Rule to Show Cause, Father responded that Mother had already left again and that her commitment to the military will continue for several more years.

the trial court. Maternal Grandparents appeared *pro se* to contest Father's enforcement action, but Mother did not. Maternal Grandparents explained that the 2020 stipulation that Father sought to enforce was **not** the most recent custody determination; according to them, there have been subsequent Colorado custody orders, including a 2022 order which granted sole custody to Mother. **See** N.T., 1/16/24, at 14. The trial court dismissed Father's first attempt for failure to provide Mother with proper notice in accordance with the Servicemembers Civil Relief Act (SCRA).

Father refiled in February 2024. Maternal Grandparents appeared with counsel; again, Mother was not present. Maternal Grandparents cited the subsequent 2022 order and argued that Father was attempting to perpetuate a fraud upon the court by seeking the enforcement of the outdated 2020 stipulation. Father reasoned that his request to enforce the 2020 stipulation was valid, despite the existence of subsequent orders, because the Colorado court lacked jurisdiction to enter those orders. **See** N.T., 2/27/24, at 14-15. He argues that the trial court had to enforce the 2020 stipulation as a matter of law.

Although the trial court still believed Father's service was defective, the court entertained Father claims. Ultimately, the court dismissed Father's action due to Mother's lack of notice; however, the court ruled alternatively

that it lack jurisdiction under the UCCJEA.[3]  Father filed this appeal.  He

presents the following issues, which we restate *verbatim*:

> 1. Did the court misrepresent the facts when the [c]ourt found, "daughter reside[s], by agreement of all parties, at Wright Patterson Air Force Base in Ohio?"
>
> 2. Did the court['s] finding that Father was committing a fraud upon the court by using a Michigan case number unfairly influence the lower court's decision making process?
>
> 3. Was the court['s] dismissal of Father['s] habeas petition with prejudice unreasonable and not in conformity with Pennsylvania law?
>
> 4. Did the lower court grossly abuse its discretion when it denied Father full faith and credit of the registered custody decree?  The court did not address Father's statutory rights provided as a matter of law, nor Father['s] cited legal authorities[?]
>
> 5. Court opinion errors

---

[3] In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court stated its belief that Father's service was in fact proper under the Servicemembers Civil Relief Act (SCRA).  *See* 50 U.S.C.A. § 3920(a)(2), (b).  Maternal Grandparents, as powers of attorney, are Mother's "legal representatives" as defined by the Act.  We note that Mother does not live with Maternal Grandparents, but she uses their address while she is deployed.

Aside from the question of service, our review of the record suggests another procedural issue.  It appears Father did not file an affidavit under 50 U.S.C.A. § 3931(b)(1)(A).  There is also the question of whether the trial court was required to appoint Mother an attorney under 50 U.S.C.A. § 3931(b)(2), notwithstanding the fact that Mother's legal representatives – *i.e.*, Maternal Grandparents – appeared with representation.

As we discuss below, the trial court addressed the merits of Father's claim and provided an alternative reason for its decision to deny Father relief – namely, that it was not authorized to grant Father' relief under the UCCJEA.  We affirm on that basis.

> a. Did the court [] misstate facts not supported by the record?
>
> b. Did the court give undue weight to unsubstantiated statements not supported by evidence?
>
> c. Did the court correct the record *nunc pro tunc* without just consideration of the best interests factors?

Father's Brief at 6-7.

Father's Brief, including his statement of questions involved, is difficult to comprehend. When a court must guess what issues an appellant is appealing, that is not enough for meaningful review. ***See, e.g., C.H.L. v. W.D.L.***, 214 A.3d 1272, 1278 (Pa. Super. 2019) (finding waiver when the Court could not discern appellant's issues on appeal) (further citation omitted). "Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." ***Commonwealth v. Vurimindi***, 200 A.3d 1031, 1038 (Pa. Super. 2018) (citation omitted).

With these principles in mind, we address Father's claims to the extent we can understand them. Much of Father's appeal can be readily disposed of. As to Father's first issue – whether ***all*** parties agreed that the Child was an Ohio resident – Father's maintains he made no such concessions. This argument is irrelevant. Although the court determined that the Child was

- 5 -

living in Ohio (as opposed to living with Maternal Grandparents in Pennsylvania) that determination did not turn on whether Father conceded the point. Indeed, Father was able to elicit an admission from Maternal Grandparents that the Child was present in Pennsylvania while Father's action was pending. Maternal Grandparents responded that the Child was only in Pennsylvania temporarily; that they had to return to Pennsylvania for a doctor's appointment and naturally had to bring the Child with them. The trial court believed Maternal Grandparents, and we will not disturb the court's credibility finding. **_See, e.g., White v. Malecki_**, 296 A.3d 1210, 1213 (Pa. Super. 2023). More to the point, the Child's residence is ultimately irrelevant. This issue is meritless.

Father's second issue is predicated upon a misunderstanding. During the proceedings, the trial court momentarily thought that one of Father's *pro se* filings contained a Michigan docket number, given its use of the initials "MI." Considering that this matter already involved three separate jurisdictions, and that Maternal Grandparents raised the specter of forum shopping, it was not unreasonable for the trial court to be on high alert. However, counsel for Maternal Grandparents explained to the trial court that the "MI" demarcation on Father's pleading stood for "miscellaneous," and that the demarcation came from the local York County Department of Court Records. To be sure, the trial court suspected Father was not being forthright, but the phantom Michigan docket number had nothing to do it. This issue is meritless as well.

The rest of Father's appeal consists of two general arguments; the first is whether the court erred by failing to consider the Child's best interests. Because the trial court dismissed Father's action on procedural grounds, the court did not – indeed, could not – reach the merits of the substantive custody issue under 23 Pa.C.S.A. § 5328(a). We discern no error there.

Father's final claim – the crux of his appeal – concerns enforcement under the UCCJEA. To resolve this issue, we are mindful of the following: "The purpose of the UCCJEA is to avoid jurisdictional competition, promote cooperation between the courts, deter the abduction of children, avoid relitigating custody decisions of other states, and facilitate the enforcement of custody orders of other states." **A.L.-S. v. B.S.**, 117 A.3d 352, 356 (Pa. Super. 2015). The UCCJEA was also enacted to conform state law with the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, which is a federal law requiring "that states give full faith and credit to another jurisdiction's child custody determination made in compliance with the provisions of the PKPA." **R.M. v. J.S.**, 20 A.3d 496, 502-03 (Pa. Super. 2011); **see also** U.S. Const. Art. IV, § 1.

Preliminarily, we recognize that a trial court's decision whether to enforce an out-of-state custody determination order pursuant to the UCCJEA is a question of law. Accordingly, this Court's standard of review is *de novo* and our scope of review is plenary. **See, e.g., Boback v. Pershing**, -- A.3d --, 2024 PA Super 30, 2024 WL 697159 (Pa. Super. 2024) (citation omitted).

Father argues that once the 2020 Colorado stipulation was duly registered in Pennsylvania, the York County trial court had no choice but to enforce it, regardless of whether there were subsequent Colorado custody orders. Father reasons that the subsequent orders have no bearing on this case anyway, because the Colorado court lacked jurisdiction to issue them. We note here that Maternal Grandparents evidently had possession of the subsequent custody order (or orders) depriving Father of custody at the hearing, but those orders were not formally entered into the record. Still, given the existence of the subsequent orders, the trial court suspected Father was knowingly attempting to mislead it. The court ultimately determined that it lacked jurisdiction because the Child resides in Ohio.

Although we affirm the trial court's decision, we depart from the court's analysis.[4] Father sought custody of the Child through enforcement of an out-of-state custody determination – specifically, the 2020 stipulation from Colorado. He did not, by contrast, petition the York County trial court to exercise jurisdiction to modify the parties' existing custody arrangement. **See** N.T., 1/16/2024, at 8. For instance, he did not allege that Pennsylvania had temporary emergency jurisdiction, or that Pennsylvania was the Child's home state, or that Colorado lacked continuing jurisdiction. The trial court's analysis

---

[4] Our Supreme Court has stated that an appellate court may apply the "right for any reason doctrine" where the correct basis for the ruling is clear upon the record, although the doctrine may be inapplicable where there are disputed facts. **See, e.g., In re: A.J.R.-H.**, 199 A.3d 1157, 1176 (Pa. 2018). As we explain, the critical facts are not disputed.

was centered on jurisdiction, which, in the context of this case, is separate from the question of enforcement. *See* 23 Pa.C.S.A. §§ 5422-5424 (relating to jurisdiction) *cf.* § 5446(b) (relating to enforcement of a registered determination).[5]

The trial court's ultimate decision is correct nonetheless. What Father sought to enforce was an outdated custody determination, which was rendered obsolete by subsequent orders. The UCCJEA provides that a court of this Commonwealth shall recognize and enforce a registered child custody determination of a court of another state. *See* 23 Pa.C.S.A. § 5446(b). However, the court is not required to enforce the registered order if that order has been vacated, stayed, or modified. *See* 23 Pa.C.S.A. § 5443(a); *see also* 23 Pa.C.S.A. § 5445(d)(2); *and see* 23 Pa.C.S.A. § 5450(a)(2). Critically, Father does not dispute the existence of these subsequent orders, nor does he dispute the allegation that these orders modified the 2020 stipulation he sought to enforce. Thus, we conclude the trial court did not err when it chose not to enforce the 2020 stipulation.

We clarify that our decision does not turn on the content of the subsequent Colorado orders, only their existence. We do not know how much custody Father is entitled, or whether Maternal Grandparents have improperly deprived him of access to the Child. That question is not before us. Our

---

[5] We caution the trial court that the question of whether a child is a nonresident of a state, though highly relevant, does not automatically resolve the question of jurisdiction. *See* 23 Pa.C.S.A. §§ 5422-5424.

decision turns on the undisputed fact that there were subsequent orders that modified the 2020 stipulation. As a final note, we acknowledge Maternal Grandparents' allegation that proceedings have resumed in Ohio. *See* Maternal Grandparents' Brief at 8. Should Father seek the enforcement of the operating custody order, or should he petition the Pennsylvania court to exercise jurisdiction, we remind the York County trial court that it must observe when and whether to confer with the Ohio court to decide where the case should be litigated. *See, e.g.,* 23 Pa.C.S.A. §§ 5410, 5426, 5447. Father cannot be left without a tribunal to seek custody of the Child.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/09/2024