J-A15019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BRITTANY TAYLOR-ROBINSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK D. STOTTLEMYER, KENDRA A. | : | |
| STOTTLEMYER | : | |
| | : | No. 93 MDA 2024 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYLER R. STOTTLEMYER | : | |
| | : | |
| | : | |
| APPEAL OF: MARK D. AND KENDRA | : | |
| A. STOTTLEMYER | : | |

Appeal from the Order Entered January 5, 2024
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2021-CV-10096-CU

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                    **FILED: JULY 12, 2024**

Mark and Kendra Stottlemyer (together, "Paternal Grandparents")

appeal from the order entered by the Dauphin County Court of Common Pleas

("trial court") denying their petition to modify the custody order pertaining to

_____

[*] Former Justice specially assigned to the Superior Court.

S.R.R. ("Child"),[1] born in May of 2018.  On appeal, Paternal Grandparents challenge the trial court's weighing of the evidence presented in its consideration of the statutorily required custody factors in awarding Brittany Taylor-Robinson ("Maternal Aunt") primary physical custody of Child, and contend the trial court failed to consider the negative impact its custody decision would have on Child's relationship with her father, Tyler Stottlemyer ("Father").  After careful review and consideration, we affirm.

The trial court aptly summarized the pertinent facts and procedural history of this case:

> On May 26, 2023, Paternal Grandparents … filed a petition for modification of the January 25, 2022[] custody order (["]custody order["]) regarding [C]hild[.]  The  custody order provided that [Paternal] Grandparents would share legal custody of [Child] with Maternal Aunt … and that [she] would have primary physical custody of [Child], with Paternal Grandparents having partial physical custody from 3:30 p.m. every Thursday afternoon through Sunday at 8:00 p.m. [Father] … is currently incarcerated in state prison, and [Child's] mother[, Carly Taylor-Robinson ("Mother"),] passed away in May of 2023.  In [Paternal] Grandparents' petition to modify, they request that the custody order … be modified to grant them primary physical custody of [Child] with [Maternal] Aunt having periods of partial physical custody.  In support of their petition to modify, [Paternal] Grandparents aver that they have a close bond with [Child], that

---

[1] Although this appeal involves a custody action, we will use the parties' names in the caption "as they appeared on the record of the trial court at the time the appeal was taken."  Pa.R.A.P. 904(b)(1).  "[U]pon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties in the caption based upon the sensitive nature of the facts included in the case record and the best interest of the child."  Pa.R.A.P. 904(b)(2); **see also** Pa.R.A.P. 907(a).  Neither party applied for the use of initials in the caption.  We will, however, refer to the minor involved in this custody dispute as "Child" to protect her identity.

[Maternal] Aunt is overwhelmed taking care of three minor children, and that it would be in [Child's] best interest to attend Middle Paxton Elementary School.

On June 21, 2023, [Maternal] Aunt filed a response to [Paternal] Grandparents' petition for modification, including a [counterclaim] to modify custody. In her response and counterclaim, [she] argues that it is in [Child's] best interest to keep primary physical custody with [Maternal] Aunt because [Maternal] Aunt has sole custody of [Child's] younger half[-]sister, [Child] has resided with [Maternal] Aunt and her family since birth, and [Father] will be incarcerated on drug and gun charges for the next several years. [Maternal] Aunt also requests that the custody arrangement be modified such that [Paternal Grandparents] have partial physical custody on alternate weekends from Friday after school or at 5:00 p.m. if no school, until Sunday at 6:00 p.m.

A full custody hearing was conducted on November 20, and 21, 2023. [Paternal] Grandparents and [Maternal] Aunt, all represented by counsel, appeared in person and testified. The court also heard from Colby Stottlemyer, [Paternal] Grandparents' son; as well as Kim Robinson, [Maternal Grandmother].

Trial Court Opinion, 12/22/2023, at 1-2 (unnecessary capitalization omitted).

In its written decision, the trial court delineated its consideration of each of the custody factors provided in 23 Pa.C.S. § 5328,[2] making credibility

_____

[2] Our General Assembly has set forth seventeen factors that trial courts are required to consider in determining any child custody matter, including requests for modification of an existing custody order, with "weighted consideration" to be given to any factor impacting the safety of the child:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm

*(Footnote Continued Next Page)*

- 3 -

to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

*(Footnote Continued Next Page)*

determinations and weighing the evidence presented before it at the modification hearing. *See id.* at 3-9. The court ultimately concluded, "with particular note given to the need to maintain stability, continuity, and strong sibling relations in [Child's] life," that it was in Child's best interest for Maternal Aunt to continue to have primary physical custody of Child. *Id.* at 10. The trial court further reduced Paternal Grandparents' partial physical custody to every other weekend during the school year, but gave the petitioning parties a week on/week off schedule for physical custody of Child during the summer; legal custody remained shared between the two parties. *Id.*

Paternal Grandparents filed a timely motion for reconsideration, asserting that the trial court's decision serves to alienate Child from Father, from Paternal Grandparents, and from the paternal side of her family as a whole; that it ignored testimony as to both parties' preferred holiday schedule; and identified specific instances wherein Paternal Grandparents contended the trial court failed to properly weigh and consider the evidence presented. Maternal Aunt filed a response in opposition. On January 5, 2024, the trial court entered an amended custody order granting Paternal Grandparents'

---

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

request for reconsideration solely as to the modification of the holiday schedule.

Paternal Grandparents timely appealed and Paternal Grandparents complied with the trial court's order for the filing of a concise statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure ("concise statement").[3] The trial court issued a statement in lieu of filing an opinion pursuant to Rule 1925(a), stating that it would rely upon its thorough discussion of the issues contained in its December 22, 2023 decision.

Paternal Grandparents raise the following issues for our review:

1. Whether the trial court erred as a matter of law in determining the weight of the custodial factors as listed on 23 Pa.C.S. § 5328 and incorrectly determined [M]aternal [A]unt should have primary custody of [C]hild based on the evidence presented at trial.

2. Whether the trial court erred in failing to analyze the negative impact primary custody with [M]aternal [A]unt would have on [C]hild's relationship with Father[.]

---

[3] Our Rules of Appellate Procedure direct that "[i]n a children's fast track appeal … [t]he concise statement of errors complained of on appeal shall be filed and served with the notice of appeal." Pa.R.A.P. 1925(a)(2)(i). In this case, which is a children's fast track appeal, Paternal Grandparents did not contemporaneously file their concise statement with their notice of appeal. They did, however, timely comply with the trial court's subsequent directive to file a concise statement. As neither the trial court nor Maternal Aunt suffered prejudice as a result of this delay in filing, we do not find the issues waived. *See Velasquez v. Miranda*, 297 A.3d 837, 842 (Pa. Super. 2023), *appeal granted on other grounds*, 308 A.3d 293 (Pa. 2023); *In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009).

Paternal Grandparents' Brief at 47.

> Our standard of review in this case is deferential:
>
> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Graves v. Graves*, 265 A.3d 688, 693 (Pa. Super. 2021) (citation omitted).

"With any child custody case, the paramount concern is the best interests of the child." *M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013) (citation omitted). "This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." *Id.* (citation omitted); *see supra*, note 2.

In their first issue, Paternal Grandparents contend that the trial court erred in its assessment of several of the custody factors—in particular, factors four, five, six, and eleven—that the court found weighed in favor of Maternal Aunt. Paternal Grandparents' Brief at 68. For ease of review and discussion, we will address the trial court's findings as to each identified factor and Paternal Grandparents' arguments related thereto, separately.

Beginning with the fourth factor, which addresses Child's need for stability in her educational, family, and community life, the trial court made the following findings:

> [Child] was born in June of 2018. [Child] has been living primarily with [Maternal] [Maternal] Aunt practically all her life, as her parents have been struggling with drug addiction. During much of that time, [Child] has lived with her younger half-sister, [M.R.], with whom she has developed a very close sister bond.
>
> With [Maternal] Aunt presently having primary physical custody, [Child] currently attends Linglestown Elementary School, where she began kindergarten in the [f]all. [Maternal] Aunt testified that [Child] has made a lot of friends at school, she has her friends over multiple times a week, … and she has sleepovers with her friends a few times a month. [Child's] younger half-sister, [M.R.], will also be attending Linglestown Elementary School in 2 years when she starts school, and she would be riding to school on the same bus as [Child].
>
> If primary physical custody were to be transferred to [Paternal] Grandparents, [Child] would be required to transfer to Middle Paxton Elementary School, rather than stay at Linglestown Elementary where her half-sister will also be attending in 2 years. Since [Child] has started school at Linglestown Elementary, and appears to be thriving there socially, the court believes it would be in [Child's] best interest to continue at this school rather than uproot her to a different school halfway through her kindergarten year. Additionally, it would be disruptive to remove [Child] from her [Maternal] Aunt's home, where she has resided almost all of her life and has developed a close relationship with her younger half-sister as well as [Maternal] Aunt. This would be a significant hindrance when it comes to maintaining stability and continuity for [Child]. Therefore, this factor weighs in favor of keeping primary physical custody with [Maternal] Aunt.

Trial Court Opinion, 12/22/2023, at 5-6.

Paternal Grandparents contend that the trial court failed to give sufficient weight to the evidence they presented related to their involvement

in Child's life and her bond to them. Paternal Grandparents' Brief at 69-71. They further point to their efforts to sign her up for extracurricular activities and grief counseling, and their involvement in school events, noting Maternal Aunt's failure to do the same. *Id.* According to Paternal Grandparents, the trial court erroneously considered the friends Child has at Maternal Aunt's house, as they are largely older than her, contending instead that they are Maternal Aunt's twelve-year-old son's friends, and that Maternal Aunt has failed to provide Child the opportunity to meet friends her own age. *Id.* at 71-72.

Our review of the record reveals that the trial court's findings are supported by the record. Although Paternal Grandparents are undoubtedly bonded and heavily involved in Child's life, so too is Maternal Aunt. Contrary to the arguments advanced by Paternal Grandparents, the record reflects that Maternal Aunt provides opportunities for Child to engage in extracurricular activities, including bowling, Toddler Time, and teaching Child to swim at Maternal Aunt's residential pool. *See, e.g.,* N.T., 11/20-21/2023, at 121, 124. She also is involved in Child's schooling. *Id.* at 127-28, 130, 185-86.

The record further reflects Child has made friends at school, and enjoys playtime and sleepovers with friends from the community of various ages, including Child's own age. *See, e.g., id.* at 124-25, 168-69; *see also* Exhibit D-2. She also reportedly enjoys playing with M.R. as well as her twelve-year-old cousin, A.K. N.T., 11/20-21/2023, at 122. Lastly, the record reflects that

Child is receiving therapy from the same play therapist she has been seeing since July 2022. *Id.* at 18, 22. Although Maternal Aunt did not have a particular objection to additional grief counseling, she testified that she did not believe it was necessary because Child had not seen Mother for two years prior to her death, and so Child did not feel as much of a loss as she may have otherwise, and she was doing well talking to her therapist and Maternal Aunt about her feelings. *Id.* at 146-47.

We decline Paternal Grandparents' invitation to reweigh the evidence. *See White v. Malecki*, 296 A.3d 1210, 1215 (Pa. Super. 2023) ("It is not the role of this Court to re-find facts, re-weigh evidence, and re-assess credibility. … Our deferential standard of review requires this Court to accept the findings of the trial court, so long as those findings are supported by competent evidence of record.") (citations omitted); *see also A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) ("The parties cannot dictate the amount of weight the trial court places on evidence."). Accordingly, we find no abuse of discretion.

As to the fifth factor, the availability of extended family, the trial court found:

> [Paternal] Grandparents have four children. One, who recently graduated from high school, lives at home with [Paternal] Grandparents, and another (… Father) is in jail. Their other two adult children live in Wyoming and South Carolina, respectively.
>
> In addition to [Child], [Maternal] Aunt lives with her mom and dad, her twelve-year-old son, and [Child]'s younger half-sister. [Maternal Grandfather] is a long-haul trucker and is not at home frequently, but [Maternal Grandmother] does not work as she is retired. [Maternal] Aunt testified that her mother comes

- 10 -

[from] a family of nine children, so she has a large family nearby, including many aunts, uncles, and cousins. [Maternal] Aunt testified that she has an older sister who lives nearby and has a 5-year-old son of her own.

Since [Maternal] Aunt has a larger extended family, including several children who are younger and closer in age to [Child], this factor weighs slightly in favor of [Maternal] Aunt.

Trial Court Opinion, 12/22/2023, at 6.

Paternal Grandparents assail the trial court's emphasis on Child's relationship with M.R. and failing to place emphasis on her relationship with Father. Paternal Grandparents' Brief at 72. Paternal Grandparents further point to testimony they provided about extended family Child has on their side as well in support of their claim that the trial court erred. *Id.* at 73.

The record supports the trial court's findings as to Maternal Aunt's large and involved extended family. *See, e.g.,* N.T., 11/20-21/2023, at 123, 136. Child's relationship with Father, who is Child's parent and a party to this matter, is not a consideration under factor five. *Cf.* 23 Pa.C.S. § 5328(a)(1) (in determining custody, requiring the trial court to consider "[w]hich party is more likely to encourage and permit frequent and continuing contact between the child and another party"). As we cannot reweigh the evidence in favor of Paternal Grandparents, *see White*, 296 A.3d at 1215, we find no error or abuse of discretion in this regard.

Turning to the sixth factor, requiring consideration of Child's sibling relationships, the trial court found as follows:

As discussed above, [Child] is very close to her half-sister, [M.R.], who is only two years younger than her, and whom she has lived with most of her life at [Maternal] Aunt's residence. The children have been raised together and are bonded. If [Child] continues to attend the same school district, her younger half-sister will be attending the same school with her in two years and riding the bus to school with her. If primary custody is transferred to [Paternal] Grandparents, however, [Child] would be seeing [M.R.] less than under the current custody arrangement and would be attending a different school district than her. Because this [c]ourt believes that it is imperative to protect [Child's] sibling relationship with [M.R.], this factor weighs in favor of [Maternal] Aunt.

Trial Court Opinion, 12/22/2023, at 7.

Although this factor focuses solely on Child's sibling relationships, Paternal Grandparents criticize the trial court for "placing too much weight on [Child's] sibling relationship rather than what is in [Child's] best interest." Paternal Grandparents' Brief at 73. Further, they again contend that the trial court erroneously prioritized Child's relationship with M.R. over that of Father and raise additional "safety" concerns that the trial court failed to consider related to specific instances testified to by Paternal Grandmother (and, incidentally, explained by Maternal Aunt during her testimony) concerning Child's medical and dental care. *Id.* at 74, 75-76.

The trial court's findings here, particularly as to the close bond Child shares with her sister, find ample record support. *See, e.g.,* N.T., 11/20-21/2023, at 118, 126, 195. None of the arguments raised by Paternal Grandparents here bear any relevance to the trial court's consideration of the sixth factor. We therefore find no abuse of discretion.

- 12 -

As to the eleventh factor, concerning the proximity of the parties' residences, the trial court found:

Testimony established that the parties currently effectuate custody exchanges at the Giant Food Store on Linglestown Road in Harrisburg. [Paternal] Grandmother testified that the Giant store is approximately halfway between each party's residence, and is approximately 13 minutes from either party's residence. Therefore, the two parties' residence are about 26 minutes apart. Given that the two residences are nearly a half hour apart, this supports [Maternal] Aunt's request that the custody arrangement be amended to an every-other[-]weekend arrangement, rather than an every weekend arrangement.

Trial Court Opinion, 12/22/2023, at 8.

Paternal Grandparents contend that the finding that the proximity of the houses weighed in Maternal Aunt's favor was error, and that this "disrupt[s] [Child's] sense of normalcy," as Child currently sees Paternal Grandparents every weekend. Paternal Grandparents' Brief at 77-78.

As the above passage reflects, the trial court used its proximity determination to support its conclusion that an every-other-weekend visitation schedule instead of every weekend is in Child's best interest. This was precisely what Paternal Grandparents requested in their modification request and at the hearing. *See* Paternal Grandparents' Proposed Parenting Plan, 9/10/2023, at 2 ("The parties will also have custody every other weekend from Friday through Sunday.") N.T., 11/20-21/2023, at 99 (Paternal Grandfather testifying to same), 207 (Counsel for Paternal Grandparents stating to the trial court: "I think what we can take from the testimony is that alternating weekends sounds to be best for both parties and that I think we

- 13 -

can agree on. I think basically both proposals allot for that."). They cannot now be heard to complain about the trial court's decision in favor of their request. *See Reese v. Reese*, 506 A.2d 471, 474 (Pa. Super. 1986) (stating that a party "will not be permitted to 'blow hot and cold' by now taking a position inconsistent with that by which he previously induced the trial court to act" in conformance therewith).

The trial court fully considered the requisite factors and its findings are supported by the record. *See White*, 296 A.3d at 1215. Based upon the trial court's credibility determinations and the deference we must give to the trial court's factual findings, we find no abuse of discretion in its decision. *See E.B. v. D.B.*, 209 A.3d 451, 469 (Pa. Super. 2019) (noting that "it is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion in awarding custody to the prevailing party") (citation omitted).

In their second issue, Paternal Grandparents assert that the trial court failed to analyze the negative impact that granting primary custody to Maternal Aunt would have on Child's relationship with Father. Paternal Grandparents' Brief at 78-80. Paternal Grandparents contend that Child's time to speak and video conference with Father, who remains incarcerated, will be limited by the trial court's decision, as reducing their time with Child means

that Father's time is necessarily reduced as well, "as Maternal Aunt refuses to maintain any sort of contact between Father and [Child]." *Id.* at 79.

The record belies Paternal Grandparents' claims. It is true that the prior custody order provides that Child have contact with Father during Paternal Grandparents' periods of custody. Custody Order, 1/25/2022, ¶2(B) ("Father may have periods of supervised visitation with child while she is in the Paternal Grandparents['] care, who shall be present at all times when the child is with Father"). There was no evidence presented, however, that Maternal Aunt refused to allow Child to have contact with Father. Indeed, Paternal Grandparents do not cite anywhere in the record to support this bald contention.

Furthermore, the custody order issued by the trial court simply states: "The child may be permitted to visit her father … via Zoom or similar videoconferencing platform, as mutually agreed upon by the parties." Custody Order, 12/22/2023, ¶5.[4] Paternal Grandparents' claim therefore entitles them to no relief.

_____

[4] We additionally observe that Father is a party to this action, but has not participated in any respect, including by failing to file a brief before this Court. The record reflects that Father had notice of the hearing on Paternal Grandparents' petition for modification, but that the trial court had difficulty coordinating Father's testimony with the prison. N.T., 11/20-21/2023, at 6. The trial court instead accepted a stipulation by counsel for Paternal Grandparents and Maternal Aunt that Father's preference was for Child to have more time with Paternal Grandparents. *Id.* at 111. There is no indication in the record that Father had any intention of participating outside of providing the stipulated testimony. *See id.* at 111.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>07/12/2024</u>